**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| DIANA MEDENDORP, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-687-Y |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY ADMINSTRATION, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Diana Medendorp ("Medendorp") filed this action pursuant to Sections 405(g) and

1383(c) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claim for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Medendorp

applied for Title II benefits in May 2009, alleging that she was disabled as of September 30,

2008. (Tr. 23, 137-44.) She last met the disability insured status requirements of Title II on

1

September 30, 1998.[1]  (Tr. 25, 59.)  After her application for benefits was denied initially and on

reconsideration, Medendorp requested a hearing before an administrative law judge ("ALJ").

(*See* Tr. 23, 62-66, 69-74.)  On June 29, 2010, she amended her alleged onset date to September

29, 1998.  (Tr. 153.)  The ALJ held a hearing on November 22, 2010 and issued a decision on

December 9, 2010, finding that Medendorp was not disabled and was not entitled to DIB because

she retained the ability to perform several jobs that occurred in significant numbers in the

national economy.   (Tr. 23-32, 38-58.)   On June 1, 2012, the Appeals Council denied

Medendorp's request for review, leaving the ALJ's decision to stand as the final decision of the

Commissioner.  (Tr. 4-6.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* and numerous

regulatory provisions.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically

determinable physical or mental impairment lasting at least twelve months that prevents the

claimant from engaging in substantial gainful activity.   42 U.S.C. §§ 423(d), 1382(a)(3)(A);

*McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is

disabled and thus entitled to disability benefits, a five-step analysis is employed.   20 C.F.R.

§§ 404.1520.   First, the claimant must not be presently working at any substantial gainful

activity.  Substantial gainful activity is defined as work activity involving the use of significant

physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527.  Second, the claimant must

have an impairment or combination of impairments that is severe.   20 C.F.R.  §§ 404.1520(c);

*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Third, disability will be found if the

impairment or combination of impairments meets or equals an impairment listed in the Listing of

---

[1] Although not relevant to the issues before the Court, Medendorp "remains fully insured for statutory blindness under Title II of the Act through August 31, 2017." (Tr. 25.)

Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(e).  Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999).  At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla but less than a preponderance. *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In her brief, Medendorp presents the following issues:

(1) Whether the ALJ's residual functional capacity ("RFC") determination was based on substantial evidence; and

(2) Whether the Appeals Council failed to consider new and material evidence of Medendorp's disability.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 6-14.)

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his December 9, 2010 decision, stated that Medendorp had not engaged in any substantial gainful activity since September 29, 1998, the amended alleged onset date for her disability. (Tr. 25.) The ALJ found that Medendorp was insured for DIB under Title II until September 30, 1998. (*Id.*) He further held that Medendorp had the severe impairments of "status post left hemi-laminectomy with a left-sided discectomy and decompression of the left L5 nerve root, status post bladder repair, and obesity." (Tr. 26.) The ALJ next opined that none of Medendorp's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 26.)

As to Medendorp's RFC, the ALJ found that she had the "capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except [she] required the freedom to alternate position from sitting to standing at her option, could not climb, crawl, kneel, or squat, could occasionally stoop and crouch, and was limited to noncomplex work." (Tr. 26-27.) The ALJ then opined, based on his RFC assessment, that Medendorp was unable to perform any past relevant work. (Tr. 30.) However, relying on the testimony of the Vocational Expert ("VE") at the hearing, the ALJ determined that there were jobs in significant numbers in the national economy that Medendorp could have performed through the date last insured. (Tr. 30-31.) Thus, the ALJ ultimately found

4

that Medendorp was not disabled "at any time from September 29, 1998, the amended alleged onset date through September 30, 1998, the date last insured." (Tr. 31.)

## V. DISCUSSION

### A. RFC Determination

As to her first issue, Medendorp argues that substantial evidence does not support the ALJ's RFC determination because, *inter alia*, the ALJ does not "clearly base the RFC on any medical statements, CE reports, or ME testimony." (Pl.'s Br. at 6-8.) RFC is what an individual can still do despite his limitations.[2] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

5

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

In this case, the ALJ determined at Step Five that Medendorp was not disabled because she could perform several jobs that existed in significant numbers in the national economy. (Tr. 31.) Before coming to this conclusion, the ALJ found, as stated above, that Medendorp had severe impairments that involved a back/spine issue, bladder repair surgery, and obesity. (Tr. 26.) Based on these impairments, the ALJ held that Medendorp had the RFC to perform "light work as defined in 20 C.F.R. 404.1567(b) except [she] required the freedom to alternate position

from sitting to standing at her option, could not climb, crawl, kneel, or squat, could occasionally stoop and crouch, and was limited to noncomplex work." (Tr. 26-27.)

As to Medendorp's severe back/spine issue, the ALJ considered, *inter alia*, the following evidence in making his RFC determination: (1) Medendorp's written statements and testimony regarding the severity of her back/spine impairment (Tr. 27-28; *see, e.g.*, Tr. 45-55, 192-98, 216); (2) a March 1992 CT of the lumbar spine that showed mild compression of both L5 nerve roots at the lateral recesses, grade 1 spondylolisthesis of L5-S1, and a moderate midline bulged disc at L4-5 (Tr. 28; *see* Tr. 910); (3) a September 9, 1992 MRI of the lumbar spine that showed a "large disc herniation at L4-5 slightly to the right of midline, with effacement and displacement of the thecal sac," a minimal central disc bulge at L5-S1, and suspected compression of the right L5 nerve root (Tr. 28; *see* Tr. 563); (4) evidence that on August 26, 1993 Medendorp underwent a left hemi-laminectomy with left-sided discectomy and decompression of the left L5 nerve root (Tr. 28, 976; *see also* Tr. 1007);[4] and (5) evidence that Medendorp underwent a second surgery, prior to the date last insured (Tr. 28, 696; *see* Tr. 997.)  As to Medendorp's bladder repair surgery, the ALJ considered, *inter alia*, evidence that she underwent such surgery in February 1997 for treatment of urinary incontinence, and that she "overall . . . was quite happy with the results" after surgery and "was no longer experiencing involuntary loss due to stress."  (Tr. 28.)[5] As to Medendorp's obesity, the ALJ noted that Medendorp had reported that she was obese and had gained weight after an automobile accident in 1992. (Tr. 27-28; *see* Tr. 53, 216.)

---

[4] After the surgery, Medendorp's pain on the left side had resolved and, with time, the pain on her right side resolved as well.  (Tr. 28; *see* Tr. 976.)  However, she later reported increased back and right leg pain. (Tr. 28; *see* Tr. 976.)

[5] The Court notes that at the hearing before the ALJ, Medendorp reported that she still had problems even after the bladder operation in 1997. (Tr. 27; *see* Tr. 55.)

After analyzing the evidence, the ALJ concluded that there was "very little medical evidence to support the claimant's complaints prior to the date last insured." (Tr. 28.) The ALJ further stated that most of the medical evidence addressed the period after the date last insured, and, thus, was "not relevant to a finding of disability through the date last insured." (Tr. 28.) The ALJ further explained:

> In terms of the claimant's alleged back pain, through the date last insured, the medical evidence establishes that the claimant had severe back pain, but her treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. The claimant was involved in a motor vehicle accident in 1992 and subsequently underwent back surgery. There is little objective evidence regarding the claimant's responsiveness to surgery and her residual symptoms. The claimant reported back pain in January 2008, but she was taking only Motrin. The claimant testified that she was unable to take other pain medication because it made her sick, but there is no evidence that other forms of pain management were required due to the claimant's inability to tolerate pain medications. The claimant alleges that she was unable to walk or get out of bed for a period of time prior to the date last insured, but there is no evidence of inability to walk and no clinical findings to support her allegation.
>
> Clinical notes in the medical evidence show a consistently high body weight indicative of obesity. The claimant is 5'2" and in January 1998 she weighed 184 pounds. The claimant's obesity could reasonably have been expected to cause some physical limitations, but there is no evidence the claimant's obesity would have precluded performance of work within the above residual functional capacity.
>
> In terms of the claimant's alleged urinary frequency, the medical evidence shows that the claimant underwent successful bladder repair in February 1997. She reportedly did well in the months following surgery, and there is no medical evidence prior to the date last insured that shows increased symptoms following surgery. The claimant alleges dizziness and vomiting, which could have been caused by diabetes, high blood pressure, or acid reflux, but prior to the date last insured there is no evidence that these symptoms caused any limitations. The claimant alleges gasping for air, but the claimant was not diagnosed with a respiratory impairment or other medically determinable impairment that would reasonably have been expected to cause the alleged symptom. The claimant alleges visual disturbance, but she did not report this symptom until after the date last insured and there is no objective evidence of visual disturbance prior to the date last insured.

. . . .

As for the opinion evidence, I have given little weight to the State agency medical opinions finding that there is insufficient evidence prior to the date last insured. The residual functional capacity set forth above is based on the updated medical evidence and is reflective of the claimant's testimony, which the State agency consultants did not have the benefit of reviewing. I have given no weight to treating physician Dr. Scott Duemler's opinion[6] because it does not address the period prior to the date last insured and does not address statutory blindness.

(Tr. 28-29 (internal citations omitted) (footnote inserted).)

Citing to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), Medendorp argues, in essence, that the ALJ did not base his RFC determination on any medical opinions in the record as he rejected Dr. Duemler's physical RFC determination and there is no mental RFC determination in the record. (Pl.'s Brief at 7.) In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[7] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the

---

[6] In a document dated October 9, 2009, Scott Duemler, M.D. ("Dr. Duemler") opined that Medendorp, in an eight-hour workday, was capable of sitting for one hour, standing and walking for half an hour, and lying down and reclining for two hours. (Tr. 343.) In addition, Dr. Duemler stated that Medendorp would need to have the flexibility to change positions frequently and elevate her legs occasionally. (*Id.*) Furthermore, Dr. Duemler opined that Medendorp could carry up to ten pounds frequently and up to twenty pounds occasionally. (*Id.*) Dr. Duemler further indicated that Medendorp was limited in her ability to push and pull and could never bend, squat, climb, reach up, or kneel. (Tr. 344.)

[7] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Ripley*, 67 F.3d at 557.

claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

The absence of a medical source statement describing the types of work that a claimant is capable of performing does not, in itself, make the record incomplete. *Ripley*, 67 F.3d at 557. "However, evidence describing the claimant's medical conditions is insufficient to support an RFC determination." *See Moreno v. Astrue*, No. 5:09-CV-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010) (citing *Ripley*, 67 F.3d at 557); *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("In *Ripley* we held that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.") "[A]n ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams*, 355 F. App'x at 832 n.6.

In this case, the ALJ found that Medendorp had the ability to perform light work with additional limitations.[8] (Tr. 26-27.) In making this decision, the ALJ gave "little weight" to the opinions of the state agency medical consultants ("SAMCs"). Even assuming the ALJ partially relied on the opinions of the SAMCs, such opinions do not support the ALJ's RFC determination

---

[8] Pursuant to the regulations, light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id. at* *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*

as they opined that Medendorp did not suffer from a severe impairment. (Tr. 29, 327, 341.)  In

addition, the ALJ specifically rejected the RFC determination of Dr. Duemler.  The ALJ does not

refer to or analyze any other medical opinion in the record that sets forth the *effects* of

Medendorp's severe impairments on her ability to work.  Instead, he appears to rely on evidence,

medical and otherwise, that does not assess Medendorp's functional limitations.  "While the ALJ

may choose to reject [such] opinion[], he cannot then independently decide the effects of

Plaintiff's . . . impairments on [his] ability to work, as that is expressly prohibited by Ripley."

*Shugart v. Astrue*, No. 3:12-CV-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013).

"At [this] point, it became incumbent upon the ALJ to obtain an expert medical opinion about

the types of work activities that Plaintiff could still perform given her impairments."  *Id.*

Because the ALJ rejected the only medical opinion in the record that he had analyzed that

explained the effects of Medendorp's impairments on her ability to perform work, there is no

medical evidence supporting the ALJ's RFC determination.  Thus, the ALJ impermissibly relied

on his own medical opinion to determine the effects of Medendorp's condition on her ability to

work.[9]  *Ripley*, 67 F.3d at 557.  Consequently, substantial evidence does not support the ALJ's

RFC determination, and remand is required.[10]  *Id.*

---

[9] *See Williams v. Astrue*, 355 F. App'x 828, 831-32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC); *Nesbitt v. Colvin*, No. 3:12-CV-98-BN, 2013 WL 5299261, at *5 (N.D. Tex. Sept. 20, 2013) ("While the ALJ may choose to reject [a doctor's] opinions, she cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*."); *Shugart*, 2013 WL 991252, at *5-6; *Mitchell v. Colvin*, No. 3:11-CV-2664-BN, 2013 WL 4546729, at *9 (N.D. Tex. Aug. 28, 2013) ("It is acceptable for the ALJ to make an assessment that Dr. Van Ness's conclusions should not receive significant weight and also to discount other medical sources, with the proper analysis, but the remaining record must include substantial evidence to support the ALJ's ultimate disability decision."); *Harris v. Astrue*, No. 11-2738, 2012 WL 3150049, at *11 (E.D. La. July 12, 2012); *Newsome v. Barnhart*, No. 3:03-CV-3030-D, 2004 WL 3312833, at *4 (N.D. Tex. Oct. 8, 2004) ("Similarly, although the instant record contains some substantial evidence that [the claimant] suffers from 'mild' fibromyalgia that has improved with medication, the record lacks substantial evidence to support the ALJ's findings concerning *the effect* of this condition on her work-related abilities, i.e., that she can perform light work."). *Cf. Carter v. Colvin*, No. 3:12-CV-01896-BF, 2013 WL 3328691, at *10 (N.D. Tex. July 2, 2013) (finding that ALJ did not violate the

Because the Court is remanding the case, the Court will not consider the second issue regarding new and material evidence. Upon remand, the ALJ should consider all evidence before it, including the new and material evidence submitted by Medendorp after the ALJ's original decision.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objections to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

---

standards set forth in *Ripley* because the ALJ considered roughly 523 pages of medical evidence in formulating the RFC determination, including an RFC assessment performed by a doctor in a consultative examination).

[10] The Court recognizes that Medendorp's insured status expired in 1998, over fifteen years ago and that her chances of a successful outcome on remand are slim. However, the Court's only job in a social security appeal is to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. As the case presently stands, there is no evidence to support the ALJ's RFC determination. Such error cannot be deemed as harmless because, assuming the ALJ should have proceeded to the RFC determination, it is impossible to determine whether Medendorp could have performed either her past relevant work at Step Four or other work that exists in sufficient numbers in the national economy at Step Five until there is a valid RFC determination.

conclusions accepted by the United States District Judge.  *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-1429 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **January 17, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 3, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE